## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**KIMBERLY JEAN MACE,**                    Case No. 1:19 CV 1502

     Plaintiff,                            Judge Christopher A. Boyko

     v.                                   Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

     Defendant.                            **REPORT AND RECOMMENDATION**

### INTRODUCTION

Plaintiff Kimberly Mace ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated January 23, 2020). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be reversed and remanded.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in March 2016, alleging a disability onset date of January 1, 2013. (Tr. 237-46). Her claims were denied initially and upon reconsideration. (Tr. 156-61, 164-75). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before an administrative law judge ("ALJ") on March 15, 2018. (Tr. 33-91). On February 28, 2019, the ALJ found Plaintiff not disabled in a written decision. (Tr. 16-26). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

(Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on July 1, 2019. (Doc. 1).

## FACTUAL BACKGROUND[1]

Personal Background and Testimony

Born in 1970, Plaintiff was 42 years old on her alleged disability onset date. *See* Tr. 237. She had a high school education (Tr. 40) and lived with her elderly mother and 21-year-old daughter at the time of the administrative hearing (Tr. 61).

In July 2016, Plaintiff reported anxiety (Tr. 281) and difficulty sleeping (Tr. 282); she became upset easily (Tr. 285). Plaintiff said she could pay attention for less than 30 minutes and did not follow instructions well. (Tr. 285). She sometimes forgot her medication (Tr. 284) or medical appointments (Tr. 286). Plaintiff described a typical day as watching the news, making meals, cleaning, going to the store, and caring for her mother. (Tr. 282).

At the time of the hearing, Plaintiff worked twenty hours per week at the Salvation Army as a "runner", bringing clothing to the sales floor (Tr. 50); she had been working there for nine months (Tr. 52). She previously worked almost 30 hours per week but her boss reduced her hours because she "[couldn't] do anything right"; she would "get lost" as to where she was supposed to

---

1. Plaintiff's challenges on appeal relate solely to the ALJ's consideration of her mental health impairments. As such, the undersigned summarizes only the records and testimony related to Plaintiff's mental heath and not those related to her physical health. The undersigned specifically finds Plaintiff waived any argument as to the ALJ's treatment of her physical impairments. At the end of a section of her brief devoted entirely to the mental health opinion evidence, Plaintiff offers a single line stating: "In addition, the ALJ failed to sufficiently discuss the physical impairments in this matter." (Doc. 13, at 22). This is insufficient to raise a challenge to the ALJ's evaluation of Plaintiff's physical impairments. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).

place an item, and then "freak out and have an anxiety attack". (Tr. 50-51). Plaintiff heard voices calling her name while she at work and home. (Tr. 65-66). She did not have a good relationship with her boss, because "[s]he's just not a pleasant person" and Plaintiff "take[s] everything personal[ly]." (Tr. 52). Other than this boss, Plaintiff had not had difficulty getting along with others in the workplace. (Tr. 60). She believed her job would be "a lot better" if she had a nice boss, but still did not believe she could work full time. (Tr. 53). Plaintiff needed instructions repeated hourly because she would forget them. *See* Tr. 54, 64. Plaintiff took medication for her anxiety. (Tr. 55-56) and used an inhaler when she had a bad panic attack (Tr. 57). She had panic attacks "[m]any times a week". (Tr. 68).

Plaintiff described herself as "very depressed" (endorsing "moderate" when offered descriptors of "mild", "moderate" or "severe"). (Tr. 59). Her medication did not help her mood and she had "hysterical crying bouts . . . for no reason". (Tr. 60). Plaintiff attended counseling weekly. (Tr. 67). She had been sober since November 21, 2016 (Tr. 59), and believed her symptoms had subsequently worsened (Tr. 67) ("It's definitely gotten worse, or I would drink to mask it and I didn't notice. But as I get more sober, it's like things get worse[.]"). Plaintiff described difficulty focusing on a two-hour movie or one-hour television show. (Tr. 68-69).

<u>Relevant Medical Evidence</u>

Medical records from 2013 through 2015 show Plaintiff had a history of anxiety and depression (though no ongoing treatment)[2], as well as an ongoing alcohol dependency problem. *See* Tr. 1122-29, 1631-33, 1670-71, 1692, 1703-04, 1726-28, 1734-36, 1744, 1769, Tr. 1798, 1821, 1824, 1833-34, 1846-49, 1877-78, 1889-90, 1902, 1945, 1967, 2050, 2100-03.

---

2. In March 2014, Plaintiff was noted to have a history of depression but was "[s]table off meds for the past several years." (Tr. 1834).

Plaintiff had several emergency room visits and hospital stays related to her alcohol use in 2015 and 2016. *See* Tr. 350, 516-17, 584-86, 619-24, 715-16, 1017-26, 1239-47, 1308-16. In March 2016, she reported suicidal thoughts. (Tr. 584). In July and August, Plaintiff's "active problem list" included anxiety and depression. (Tr. 1239-40, 1314-16).

In September 2016, Plaintiff underwent a consultative psychological evaluation with Charles Misja, Ph.D. (Tr. 1607-13). Plaintiff reported her two children (ages 17 and 19) lived with her, as did her 80 year old mother for whom she provided care. (Tr. 1608). She also reported a "gentleman friend who helps out financially occasionally." *Id.* Plaintiff described herself as an alcoholic and had attended several rehabilitation programs. (Tr. 1609). She also reported a history of depression, with treatment at Oakview; she "recently went to a therapist but it ended poorly." *Id.* Plaintiff reported her attendance and punctuality were fine at prior jobs, but she had trouble being told what to do, did not like being around people, and had a panic attack at a prior job. *Id.* Plaintiff reported she belonged to the VFW ("on a social basis not being a veteran"); she had a few friends, including a best friend, but did "little socially." *Id.* Plaintiff did "all the household tasks . . . and [was] in charge of running the household of four". *Id.* Dr. Misja observed Plaintiff appeared somewhat disheveled, and "[t]here was a strong and distinct odor of alcohol about her." *Id.* "She was irritable although cordial and cooperative . . . [;] [s]he rambled and required frequent redirection[; and] [s]he made good eye contact." (Tr. 1610-11). Plaintiff's affect was constricted; her mood was depressed and "mildly labile". (Tr 1611). She rated both her depression and anxiety at eight to nine out of ten; she had panic attacks twice per week. *Id.* Dr. Misja observed no evidence of hallucinations, or bizarre or unusual thought content. *Id.* Plaintiff recalled three out of three words after an interval of five minutes. *Id.* She could not do serial sevens, but could do serial threes and digits forward to five and backwards to four. (Tr. 1612). Dr. Misja estimated Plaintiff's to

have average intelligence; her insight and judgment were poor to fair. *Id.* Dr. Misja diagnosed alcohol dependence and major depression[3] (recurrent, severe). *Id.*

In November 2016, Plaintiff was admitted to the hospital for an intentional overdose after being arrested for a DUI. (Tr. 2799, 2851). Her discharge diagnoses included polysubstance abuse, polysubstance withdrawal, alcohol abuse, anxiety, and depression. (Tr. 2851).

In December 2016, Plaintiff underwent a psychosocial assessment at Southwest General. (Tr. 2588-2611). The provider noted Plaintiff had last been treated for depression and anxiety ten years prior. (Tr. 2588). Plaintiff's memory was intact, and she was able to focus; her affect was flat, anxious, and pleasant, and her mood was anxious and dysphoric. (Tr. 2594). Plaintiff was diagnosed with major depressive disorder and alcohol dependence. (Tr. 2608). The provider referred Plaintiff to the "Day Mental Health Outpatient Program" (Tr. 2609). Plaintiff attended group therapy in December 2016 (Tr. 2579-87), January 2017 (Tr. 2553-78), February 2017 (Tr. 2525-52), and March (Tr. 2487-2524). These notes indicate the "type of program" Plaintiff was attending was "[i]ntensive [o]utpatient [t]reatment". *See, e.g.*, Tr. 2583.

In March 2017, Plaintiff saw Thomas Thysseril, M.D., for a medication follow up. (Tr. 3100-04). Dr. Thysseril noted Plaintiff was in the "PHP program", but that it was to end, and Plaintiff would then start "CDIOP" the following week. (Tr. 3100). Dr. Thysseril noted Plaintiff's medications included Wellbutrin, Effexor, Seroquel, and Naltrexone. (Tr. 3102). She was cooperative with good eye contact and psychomotor retardation; her mood was depressed, her affect restricted, and her thought process "helpless". *Id.* She was alert and oriented, with intact recent and remote memory. (Tr. 3103). Dr. Thysseril's diagnosed major depression (recurrent,

---

3. Dr. Misja wrote "Major Dependence" but this appears to be a typographical error. *See* Tr. 1612. The diagnostic code he listed – 296.33 – is the diagnostic code for major depression. *See* Am. Psych. Ass'n, Diagnostic & Statistical Manual of Mental Disorders V, at 849.

moderate) and generalized anxiety disorder. (Tr. 3103). He continued Plaintiff's medications. (Tr. 3104). Two weeks later, Plaintiff reported less depression and more anxiety. (Tr. 3095). Dr. Thysseril noted similar findings on mental status examination and continued Plaintiff's diagnoses and medications. (Tr. 3097-99).

Plaintiff continued group therapy in April 2017. (Tr. 2471-86). The "type of program" listed changed from "[i]ntensive [o]utpatient [t]reatment" at the beginning of the month, *see* Tr. 2485, to "[c]ontinuing [c]are group therapy" at the end of the month, *see* Tr. 2471.

In May 2017, Plaintiff told Dr. Thysseril she was easily emotional and crying easily without any reason. (Tr. 3090). Dr. Thysseril noted Plaintiff "finished PHP and started in CDIOP after care". *Id.* She had been sober for 6 months and had more mood swings, racing thoughts, and interrupted sleep. *Id.* Dr. Thysseril noted Plaintiff's mood was mixed, her affect anxious and tearful, and her thought process helpless and circumstantial. (Tr. 3092). Dr. Thysseril's diagnoses were major depressive disorder (recurrent, moderate) and rule out bipolar disorder. (Tr. 3093-94). She continued to attend her group therapy sessions that month. (Tr. 3117-21).

Plaintiff continued group therapy (Tr. 3111-16), graduating in July (Tr. 3111). At her final therapy session, Plaintiff reported working "but it's only for five hours a day and I get a small paycheck"; she called her job "stupid" and expressed her dislike of her boss. *Id.* She reported feeling "good" and the provider noted she was attentive and participated appropriately. *Id.* She had no mood disturbance and a broad affect. *Id.*

In June 2017, Plaintiff saw a physician for a physical. (Tr. 3232-33). The provider noted she "[s]ees outside [p]sych for [a]nxiety and [d]epression which is stable" and "[a]lso sees counselor". (Tr. 3233). Her psychiatric review of symptoms was negative. (Tr. 3233). She had a

normal affect (Tr. 3235) and the physician observed that Plaintiff's anxiety and depression were "stable" and she should "cont[inue] regimen as per outside psych" (Tr. 3236).

Plaintiff returned to Dr. Thysseril later in July. (Tr. 3153). She remained sober and was working at Salvation Army. *Id.* Dr. Thysseril observed Plaintiff was "more pleasant, reactive, less anxious"; her thoughts were "more logical", and she had no mood swings. *Id.* On mental status examination, she was cooperative with good eye contact and psychomotor retardation. (Tr. 3156). Her mood was anxious, her affect was reactive, her thought process was circumstantial, and her thought content was "preoccupied with alcohol craving". *Id.* Dr. Thysseril's diagnoses were major depressive disorder (recurrent, mild), rule out bipolar disorder, generalized anxiety disorder, and alcohol abuse disorder. (Tr. 3157).

At a September visit with Dr. Thysseril, Plaintiff was ten months sober and "still working at Salvation Army". (Tr. 3143). "She [said] she has been slowed down, forgetful[.]" *Id.* She also reported she discussed her mental health problems with her supervisor "and they [were] understanding". *Id.* She was cooperative with good eye contact and psychomotor retardation; her mood was anxious and her affect was reactive. (Tr. 3146). Plaintiff's thought process was circumstantial and she was "preoccupied with forgetting." *Id.* She was again alert and oriented with intact memory. *Id.* Dr. Thysseril assessed *inter alia*, major depression (recurrent, mild), rule out bipolar disorder generalized anxiety disorder, and alcohol abuse disorder. (Tr. 3147).

In October, Plaintiff told Dr. Thysseril she remained sober and working at Salvation Army. (Tr. 3139). She complained of forgetfulness, noting she was "easily distracted, forgetful things where she placed [sic] or cannot finish her job at work." *Id.* She requested a change in medication "to help her with her concentration." *Id.* Her mental status examination was similar to September,

including her preoccupation with forgetting. (Tr. 3140-41). Her remote and recent memory were intact; she was alert and oriented. *Id.* Dr. Thysseril continued his prior diagnoses. (Tr. 3142).

At a December 2017 visit for physical health issues, Plaintiff reported she "[t]hinks she needs to have her brain evaluated" noted she was "[v]ery forgetful" and "get[s] super confused". (Tr. 3184). The physician referred Plaintiff to neurology. (Tr. 3186).

*Opinion Evidence*

In August 2016, State agency physician Sandra Banks, Ph.D., reviewed Plaintiff's records and opined Plaintiff had moderate limitation in the ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but was otherwise not limited in concentration and persistence. (Tr. 103-04) (explaining: "[Claimant] retains the ability to complete simple and multistep tasks at an adequate pace."). Dr. Banks further opined Plaintiff was moderately limited in her ability to: interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 104). She explained:

> [Claimant] is limited by her personality [disorder], but has a best friend and socializes weekly. She also spends time with family and takes care of ADLs for a family of four. She tends to her mother's health needs. She retains the ability to interact superficially with co-workers, supervisors and the public on a limited basis. She would respond poorly to over-the-shoulder supervision.

*Id.* Finally, Dr. Banks opined Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting, noting: "[Claimant] can be expected to adapt to routine, predictable changes in a relatively stable setting." (Tr. 105).

After his evaluation in September 2016, Dr. Misja offered an opinion regarding Plaintiff's functional abilities. (Tr. 1613). He opined Plaintiff would have "no difficulty understanding, remembering, and implementing ordinary instructions." *Id.* He noted she was likely to have "minimal" problems with maintaining attention concentration, persistence and pace. *Id.* When asked to describe Plaintiff's work-related social interaction abilities Dr. Misja wrote:

> The claimant reported a legal history "18 pages long" including OVIs. She also has a personality disorder with antisocial and histrionic features and she made it abundantly clear that she does not like to be told what to do. She's been fired from jobs because of altercations with supervisors. Problems in this area are likely to be in the severe range.

*Id.* Finally, Dr. Misja opined Plaintiff was likely to have "minimal to intermediate" problems in responding appropriately to work pressures in a work setting. *Id.*

In December 2016, Leslie Rudy, Ph.D., reviewed Plaintiff's records for the State agency and reached similar conclusions as Dr. Banks. (Tr. 135-37).

In February 2017, Raman Baishnab, D.O., completed a "Medical Source Assessment (Mental)" form. (Tr. 1626-28). He opined Plaintiff would be unable to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, or work in coordination with or proximity to others without being distracted by them. (Tr. 1626). He further opined Plaintiff would have significant difficulty[4] with: remembering work procedures and understanding and remembering very short and simple instructions. *Id.* Dr. Baishnab concluded Plaintiff would have difficulty[5] with short and simple

---

4. Dr. Baishnab checked a box indicating four, on a scale of one to five, with four defined as "able to perform designated task or function, but has or will have noticeable difficulty (distracted from job activity) more than 20 percent of the work day or work week (*i.e.*, more than one hour and up to two hours/day or one-half to one day/week)". (Tr. 1626).
5. Specifically, Dr. Baishnab checked a box indicating three, on a scale of one to five, with three defined as "able to perform designated task or function, but has or will have noticeable difficulty

instructions, sustaining an ordinary routine, performing activities within a schedule, making simple work-related decisions, accepting instructions and responding appropriately to supervisors, being aware of normal hazards, and setting realistic goals or making plans independently. (Tr. 1626-27). Dr. Baishnab further concluded Plaintiff would have minor difficulty[6] with completing a normal workday or workweek without interruptions from psychological symptoms, interacting appropriately with the general public, asking questions or requesting assistance, getting along with coworkers, maintaining socially appropriate behavior, responding appropriately to changes in the work setting, and traveling in unfamiliar places. (Tr. 1626-27). Dr. Baishnab further opined Plaintiff would likely miss about three days per month due to her impairments or treatment, would be off-task about twenty percent of a workday, and would need approximately two ten-to-twenty minute unscheduled breaks in addition to normal break periods. (Tr. 1627). As the medical findings in support of his opinions, Dr. Baishnab wrote: "[i]nability to sustain focus/concentration". "[e]asily confused by simple instructions" and "[e]asily overwhelmed by stress." (Tr. 1628).

In January 2018, therapist Xavier Spencer wrote a letter noting Plaintiff was diagnosed with alcohol-induced neurocognitive disorder, generalized anxiety disorder, and personal history of self-harm. (Tr. 3241). Mr. Spencer noted: "It appears that [Plaintiff] struggles with cognitive impairments and perceptual disturbances that seem to constrain her psychological functioning" with symptoms of "persistent amnesia, disorientation, confusion, motor coordination and decline in executive function". *Id.* Mr. Spencer noted Plaintiff "expressed experiencing hearing voices call

---

(distracted from job activity) from 11-20 percent of the work day or work week (*i.e.*, more than one hour/day or one-half day/week)". (Tr. 1626).
6. Specifically, Dr. Baishnab checked a box indicating two, on a scale of one to five, with two defined as "able to perform designated task or function, but has or will have noticeable difficulty (distracted from job activity) no more than 10 percent of the work day or work week (*i.e.*, one hour or less/day or one-half day or less/week)". (Tr. 1626).

her name at work, and when she attempts to respond to co-workers, it's revealed that he/she had not verbalize[d] her name", which left her "feeling bewildered and perplexed." *Id.* Mr. Spencer also noted Plaintiff "reports being asked to complete a task at work, goes to the area to complete the task, but forgets what she was there to perform". *Id.* Plaintiff reported "feeling guilty for her inability to complete tasks, and feeling overwhelmed because of the increased effort it takes to complete a simple task at home and work, elevating her mood to anxious." *Id.* Mr. Spencer noted Plaintiff "continues to struggle with neurocognitive constraints[,] expressing that on a daily basis she is 'forgetful, unable to remember most things that are required for her to live fully.'" (Tr. 3242). Finally, he noted Plaintiff had a neurology appointment scheduled for later that month. *Id.*

VE Testimony

A VE appeared and testified at the administrative hearing. (Tr. 82-86). The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, work experience, and residual functional capacity ("RFC") as ultimately determined by the ALJ. *See* Tr. 82-83. This question included a limitation to "occasional interaction with supervisors and occasional and superficial interaction with coworkers and the public." (Tr. 83). The VE responded that such an individual could not perform Plaintiff's past work, but could perform other jobs such as cleaner/housekeeper, laundry aide, and hand packager. (Tr. 83-84). The VE further opined if Plaintiff needed instructions repeated twice daily, needed two additional fifteen minute breaks per day, were off task twenty percent or more of the day, or missed three days of work per month, no work would be available. (Tr. 85-86).

11

ALJ Decision

In his February 28, 2019 decision, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2016[7] and had not engaged in substantial gainful activity since her alleged onset date of January 1, 2013. (Tr. 18). The ALJ then found Plaintiff had severe mental impairments of mood disorder, generalized anxiety disorder, personality disorder, and alcohol-induced neurocognitive disorder. (Tr. 19). He found none of these impairments – individually or in combination – met or medically equaled the severity of any listed impairment. *Id.* Thereafter, the ALJ concluded that Plaintiff had the following mental RFC:

> [She] is further limited to simple, routine tasks with no strict time demands, no strict production quotas, no more than simple work instructions and decision, and no more than routine, predictable changes in the work setting; and she is limited to occasional interaction with supervisors, and occasional and superficial interaction with coworkers and the public.

(Tr. 21). Considering the Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs that exist in significant numbers in the national economy that she could perform. (Tr. 25). Therefore, the ALJ found Plaintiff not disabled. *Id.*

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

---

7. Plaintiff asserts this date is incorrect and her date last insured should have been December 31, 2016. (Doc. 13, at 1) (citing Tr. 263). The date last insured does not affect the outcome herein.

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to

establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff contends the ALJ erred in considering the Listings at Step Three, in formulating the RFC at Step Four, and in determining Plaintiff was capable of working at Step Five. For the reasons discussed below, the undersigned recommends the decision be reversed and remanded.

Step Three: Listings

Plaintiff first asserts the ALJ erred at Step Three. She argues the ALJ "failed to consider the totality of the evidence" in evaluating the "B" criteria of the mental health listings.

The Social Security listings streamline the disability decision-making process by identifying individuals whose impairments are more severe than the statutory disability standard, preventing performance of any gainful activity (not just substantial gainful activity) regardless of age, education, or work experience. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925(a)). The listings create a presumption of disability, making further inquiry unnecessary. *Id.* To qualify for benefits under a listing, a claimant must prove her impairment satisfies all the listing's specified medical criteria. 20 C.F.R. § 404.1525(d); *see also Zebley*, 493 U.S. at 530. The claimant bears the burden of proving that a condition meets or equals a listed impairment at step three. *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727–28 (6th Cir. 2004).

The mental health listings at issue here – Listings 12.02, 12.04, 12.06, 12.08 – require Plaintiff to show "extreme limitation of one, or marked limitation of two, of four areas of mental functioning": (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentration, persistence, or pace; and (4) adapting and managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.02, 12.04, 12.06, 12.08 (the "paragraph B" cirteria).

At Step Three, the ALJ explained that he considered Plaintiff's mental impairments under Listings 12.02, 12.04, 12.06, and 12.08. (Tr. 19). He found Plaintiff had "moderate" limitation in all four domains (understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and adapting and managing oneself). (Tr. 20). Plaintiff argues the ALJ failed to consider the totality of the evidence in this analysis – specifically, more restrictive social interaction limitations as opined by Dr. Misja, and Plaintiff's forgetfulness post-sobriety. She does not present a specific argument as to how this evidence would show she satisfies one of the mental health listings. Rather, she argues generally:

> When the ALJ failed to review all the medical evidence in the record, especially the records documenting the deterioration of her psychological symptoms after her sobriety, he failed to properly evaluate whether Mace satisfied the "B" criteria of the psychological Listings. If the ALJ had properly reviewed the evidence as set forth above, he would have found that Mace had marked limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace. Failure to properly consider and evaluate the evidence in this matter constituted harmful error.

(Doc. 13, at 17).

The undersigned finds Plaintiff has failed to point to a specific error requiring remand at Step Three. However, as discussed below, remand is required at Step Four.

RFC

Next, Plaintiff directs several arguments at the ALJ's analysis of the evidence and formulation of the RFC. She contends the ALJ did not properly evaluate the opinion evidence,

failed to consider certain record evidence, failed to properly evaluate her subjective symptom reports, and failed to include certain limitations in the RFC. For the reasons discussed below, the undersigned recommends this Court reverse and remand for further proceedings.

Preliminarily, a claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence *Id.* §§ 404.1529, 416.929. An ALJ must also consider and weigh medical opinions, but the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004); 20 C.F.R. §§ 404.1527, 404.1546, 416.927, 416.946; *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 416.946(c)) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician."). The RFC determination must be supported by evidence of record, but it need not correspond to, or even be based on, any specific medical opinion. *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Instead, it is the ALJ's duty to formulate a claimant's RFC based on all the relevant, credible evidence of record, medical and otherwise. *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013).

*Subjective Symptom Analysis*

The undersigned begins with the ALJ's subjective symptom analysis because Plaintiff's arguments directed at the RFC surround, in large part, her contention that the ALJ failed to properly address her subjective allegation that her mental health condition deteriorated after she got sober.

In considering symptoms, an ALJ follows a two-step process, prescribed by regulation. An ALJ must first determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms; second, if such an

impairment exists, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529(a), 416.929(a). In making this determination and considering whether a claimant has disabling symptoms, an ALJ must consider: (1) daily activities; (2) location, duration, frequency, and intensity of pain or symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, to relieve pain; and (6) any other measures used to relieve pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR 16-3p, 2017 WL5180304. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ's subjective symptom evaluation determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The Sixth Circuit has explained (interpreting SSR 96-7p, the precursor ruling), that a credibility determination will not be disturbed "absent compelling reason". *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The Court is limited to determining whether the ALJ's reasons are supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.].". Nevertheless, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

The ALJ in this case first summarized Plaintiff's symptoms:

> The evidence indicates that the claimant has symptoms that include mood swings, anxiety and panic attacks, racing thoughts, crying spells, difficulty concentrating, forgetfulness, feelings of helplessness, poor sleep, and suicidal thoughts with history of suicide attempt [citing Tr. 361, 540, 575, 2494, 3070-71, 3090, 3139, 3186]. However, the evidence indicates that the claimant's anxiety and depression have been stable since her sobriety with improvement of symptoms [citing Tr. 3140, 3142, 3148, 3152, 3236].

(Tr. 22). He then explained:

> Therefore, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

(Tr. 23). Respondent contends this is sufficient, noting, 1) the ALJ spent several paragraphs earlier in the opinion also discussing Plaintiff's subjective symptom reports; and 2) "the ALJ clearly did not accept this subjective complaint [a worsening of symptoms after sobriety], as the ALJ pointed to evidence of [her] improvement." (Doc. 16, at 9). Respondent is – to some degree – correct. The ALJ did discuss Plaintiff's symptoms in his evaluation of the "B" criteria of the mental health listings at Step Three. *See* Tr. 20. And, the ALJ accurately cited improvement in some of Plaintiff's mental health symptoms resulting from her anxiety and depression. *See* Tr. 22; *see* Tr. 3142, 3152 (August and October 2017 description of Plaintiff's depression as "mild"); Tr. 3148 (August 2017 – "[n]o mood swings, no racing thoughts."); Tr. 3236 (June 2017 notation that Plaintiff's anxiety and depression were "stable"); *see also* Tr. 3153 (July 2017 notation that Plaintiff was "more pleasant, reactive, less anxious" and her thoughts "more logical"). However, the ALJ did not address Plaintiff's subjective complaints of increased forgetfulness post-sobriety. Thus, this reviewer cannot "assess how the adjudicator evaluated [that] symptom[]." SSR 16-3p, 2017 WL

5180304, at *10. That is, the ALJ's citation of Plaintiff's improvement in anxiety and depression symptoms does not directly address to the question of her forgetfulness symptom.

In September 2017, Plaintiff told Dr. Thysseril she "ha[d] been slowed down, forgetful, not attending AA meetings now"; her thought process was circumstantial and she was "preoccupied with forgetting". (Tr. 3143, 3146). She repeated her forgetfulness complaint in October (describing herself as "easily distracted, forgetful things where she placed [sic] or cannot finish her job at work"); she requested medication "to help with her concentration" and she continued to be "preoccupied with forgetting". (Tr. 3139-41). At a December visit for physical health issues, Plaintiff told a physician that she "[t]hinks she needs to have her brain evaluated", explaining she was "[v]ery forgetful" and "get[s] super confused"; the physician referred her to a neurologist. (Tr. 3184). In January 2018, therapist Mr. Spencer noted Plaintiff reported difficulty at work due to forgetfulness. *See* Tr. 3241-42. At the March 2018 hearing, Plaintiff stated she had been working part-time at the Salvation Army for nine months. (Tr. 52). She described her hours being cut because she "[couldn't] do anything right" and would "get lost" as to where she was supposed to place an item. (Tr. 50-51). She further described needing instructions repeated hourly because she would forget them. (Tr. 54, 64).

The Commissioner is certainly correct that the ALJ was not required to accept Plaintiff's subjective report of forgetfulness. *See Jones*, 336 F.3d at 476. But he was required to explain his consideration thereof, and did not do so. SSR 16-3p, 2017 WL 5180304, at *10. The VE here testified if an individual with Plaintiff's other limitations required "instructions repeated on a daily basis twice a day", no work would be available. *See* Tr. 85 ("[T]his particular condition, this is above and beyond normal competitive work instruction and would require an accommodation by an employer. Therefore, it is not competitive work, so there's no work under that condition.").

19

For these reasons, the undersigned recommends the Court remand this case for further explanation of the consideration of Plaintiff's subjectively-reported symptom of forgetfulness.

*Opinion Evidence*

The ALJ's failure to explain his evaluation of Plaintiff's subjectively-reported forgetfulness symptom also requires remand for further explanation as to some opinion evidence. Plaintiff argues the ALJ erred in his consideration of the opinions of Dr. Misja, Mr. Spencer, and Dr. Baishnab. (Doc. 13, at 17-18). She also more generally argues that the ALJ more generally erred in affording more weight to older non-examining physician opinions than those from treating or examining physicians. *Id.* at 17; *see also* Doc. 17, at 2-3.

Social Security Regulations dictate a hierarchy of medical opinions: first is a treating source whose opinion is entitled to deference because it is based on an ongoing treatment relationship; second is a non-treating source, which are medical sources who have examined but not treated the plaintiff; and last is a non-examining source, those who render opinions based on a review of the medical record as a whole. 20 C.F.R. §§ 404.1502, 416.902. Generally, medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. A treating physician's opinion receives "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). When the physician's medical opinion is not granted controlling weight, an ALJ must give "good reasons" for the weight assigned, reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.". *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. §

416.927(d)(2); SSR 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These include the length of treating relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the entire record, and the specialization of the treating source. *Id.*

For medical opinions from non-treating physicians, an ALJ is to consider the same factors, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c), but need not give "good reasons" to discount such opinions. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016). ALJs must only provide a meaningful explanation regarding the weight given to these opinions. *See* SSR 96-6p, 1996 WL 374180, at *2; *see also Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 520 (6th Cir. 2011) ("the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning") (internal citation and quotation omitted). Finally, as to "other source" opinions such as counselors, Social Security Ruling 06-03p explains an ALJ "generally should explain the weight given to opinions from these 'other sources' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 WL 2329939, at *6.

### Dr. Baishnab & Mr. Spencer

Plaintiff contends the ALJ's evaluation of Dr. Baishnab's and Mr. Spencer's opinions was deficient. As to Mr. Spencer's opinions, Plaintiff argues: "The ALJ continued to point out that Mace was working part time at Salvation Army but failed to report her employment difficulties including asking for instructions to be repeated on an hourly basis as stated at the hearing and in

21

sessions with Dr. Thysseril (Tr. 3139, 3143, 51-53)." (Doc. 13, at 17-18). As to Dr. Baishnab, she

argues the ALJ's explanation that "the overall evidence does not establish that the claimant is that

limited" failed to account for Plaintiff's reports "that she was having problems at work with

forgetting her job duties and had her hours reduced." *Id.* at 18. The ALJ explained:

> Partial weight is given to the medical source statement completed by Xavier
> Spencer, DMFT, CST, LCDC-III dated January 24, 2018. The statement consists
> primarily of checked boxes in the moderate range, which is consistent with the
> overall evidence, which indicates that the claimant is moderately limited in her
> ability to perform work-related mental activities. However, he also indicated that
> the claimant would be off task 20% of a typical workday and this is not supported
> by the evidence in the record, which establishes that the claimant has been working
> part-time since 2017 (Exhibit 23, pp. 1-2). Limited weight is given to the letter from
> Mr. Spencer dated January 23, 2018. He indicated that the claimant struggles with
> neurocognitive constraints on a daily basis including that she is forgetful and unable
> to remember most things that are required for her to live fully. Such opinion is based
> on the claimant's subjective complaints and not supported by the objective evidence
> in the record, including that she has been working part-time at the Salvation Army
> (Exhibits 22F; 23F, pp. 4-5; 25F).

> Limited weight is also given to the medical source statement completed by Raman
> Baishnab, D.O., dated February 1, 2017. He indicated that the claimant was not
> able to understand, remember or carry[] out detailed instructions, maintain attention
> or concentration for extended periods of time, and work in coordination with or in
> proximity to others without being distracted by them, and would be unable more
> than 20 percent of the work day to remember locations and work-like procedures
> and to understand and remember very short, simple instructions. However, the
> overall evidence does not establish that the claimant is that limited. Furthermore,
> he indicated that he claimant would be off task over 20% of a typical workday and
> would be absent about three days per month and this is not supported by the
> evidence in the record, including the evidence that the claimant is working 20 hours
> a week (Exhibit 12F).

(Tr. 23-24).

Preliminarily, the undersigned notes that Dr. Baishnab appears to be a non-treating

physician[8], and Mr. Spencer is an "other source." The ALJ discounted both of these opinions, in

---

8. Plaintiff has not pointed to any evidence suggesting Dr. Baishnab is a treating physician. The
Commissioner argues he is not. *See* Doc. 16, at 12. In Reply, Plaintiff does not present any specific

part, due to either the fact that they were based on Plaintiff's subjective complaints, or due to her ability to work part-time. Although it can be appropriate to discount a medical opinion because it is based on subjective complaints without the support of objective findings, *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004), where the ALJ did not properly evaluate those underlying subjective complaints, it is necessary for the ALJ to re-evaluate this opinion evidence on remand as well.

As discussed above, the ALJ failed to adequately explain how he considered Plaintiff's subjective complaint of forgetfulness or how that impacted Plaintiff's existing work situation. He did not acknowledge Plaintiff's testimony that she required repeated instructions as often as hourly at work. *See* Tr. 54, 64. Without the ALJ explaining how he considered this subjective complaint – it is not clear his reliance on Plaintiff's part-time work to undermine Mr. Spencer's or Dr. Baishnab's opinions regarding Plaintiff's off-task behavior or forgetfulness is supported. Therefore, because remand is required for the ALJ to further explain his evaluation of this particular symptom, because this is intertwined with his evaluation of this opinion evidence, the ALJ should re-evaluate Mr. Spencer and Dr. Baishnab's opinions on remand as well.[9]

*Dr. Misja*

By contrast, the undersigned finds no error in the ALJ's evaluation of Dr. Misja's opinion. The ALJ credited much of this opinion, but explained he assigned it partial weight and described

---

argument to the contrary. *See* Doc. 17, at 2.As such, the undersigned finds Dr. Baishnab's opinion is not entitled to the deference of the treating physician rule.

9. The ALJ's reliance on the state agency opinions (to which he assigned "significant weight") cannot mend this error. *See* Tr. 23. Although it is not error for an ALJ to rely on medical opinions from physicians who have not reviewed the entire record so long as the ALJ considers the post-dated evidence in formulating his opinion. *See, e.g., McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009), here the two opinions were offered in August and December 2016, before Plaintiff's forgetfulness complaints began. And, as discussed above, the ALJ did not specifically evaluate the forgetfulness symptom.

his reasons for discounting one portion of the opinion: "However, [Dr. Misja] found that the claimant would have severe problems in responding appropriately to supervision and to coworkers and the overall evidence in the record establishes that the claimant has moderate limitations in this area (Exhibit 10F)." (Tr. 23). Plaintiff contends this explanation is deficient because "[t]here is no reference to any evidence in the record which would refute Dr. Misja's conclusions." (Doc. 13, at 17). However, for this non-treating source, the ALJ is not required to provide heightened "good reasons", but rather only a meaningful explanation, or "enough to allow the appellate court to trace the path of his reasoning." *Stacey*, 451 F. App'x at 520; *Martin*, 658 F. App'x at 259. Three pages earlier in his opinion, at Step Three, the ALJ explained that he found Plaintiff to only have moderate limitation in interacting with others because:

> The evidence indicates that the claimant has a best friend and she lives with her mother and two children. This establishes that she has the ability to form relationships. However, she has a legal history and a history of substance abuse. She has indicated that she has also been fired from jobs in the past and there is evidence that she does not get along with her current boss (Exhibits 10F, pp. 2, 4, 7; 18F, pp. 7, 9).

(Tr. 20). The Sixth Circuit has explained that reversal may be "not warranted" when "the ALJ's conclusion was sufficiently supported by factual findings elsewhere in the decision that need not be repeated." *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 455 (6th Cir. 2016) (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)). The undersigned finds the ALJ's decision sufficiently explains his rationale for assigning less weight to Dr. Misja's more restrictive opinion regarding workplace interaction. His earlier explanation of Plaintiff's social interaction limitations explains that Plaintiff is capable – to some degree – of relating to others. *See* Tr. 20; *see also* 20 C.F.R. Pt. 404, App'x 1, § 12.00C(2) ("Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."). Moreover, the ALJ's rationale that "the overall evidence in the record establishes that

24

the claimant has moderate limitations in this area" is supported by additional record evidence. *See,
e.g.*, Tr. 60 (Plaintiff's testimony of no prior difficulty getting along with others at work); Tr. 1608
(Plaintiff told Dr. Misja she had a friend who helped financially). Finally, the ALJ accounted for
significant social limitations in Plaintiff's ability to work – limiting her to "occasional interaction
with supervisors, and occasional and superficial interaction with coworkers and the public." (Tr.
21). Therefore, the undersigned finds no error in the ALJ's consideration of Dr. Misja's opinion.

<u>Step Five</u>

Finally, Plaintiff contends the ALJ erred at Step Five of his analysis because: 1) he did not
include in the RFC some limitations posed in hypothetical question to the VE; and 2) the VE
"never addressed the fact that this person could only have limited occasional interaction with
others". (Doc. 13, at 24-25).

To meet the burden at Step Five, the Commissioner must make a finding "'supported by
substantial evidence that [Plaintiff] has the vocational qualifications to perform specific
jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)
(quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)).
"Substantial evidence may be produced through reliance on the testimony of a vocational expert
in response to a 'hypothetical' question." *Id.* If an ALJ relies on a VE's testimony in response to a
hypothetical to provide substantial evidence, that hypothetical must accurately portray the
claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010).
However, an ALJ is only required to include in the RFC those restrictions he finds credible and
supported. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y
of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *see also Salyer v. Comm'r of
Soc. Sec.*, 574 F. App'x 595, 596 (6th Cir. 2005) ("Regarding the first contention, though the VE

testified that Salyer's job prospects would diminish if certain hypothetical conditions applied, that testimony lacks relevance because in fact the ALJ found that none of those conditions applied.")

As to Plaintiff's first argument, the additional limitations offered to the VE upon which Plaintiff relies were based on her subjective symptoms reports. As discussed above, remand is required for the ALJ to further evaluate those reports. As such, it is not necessary to reach this argument at this juncture.

Plaintiff's second argument is simply factually incorrect. The hypothetical question the ALJ posed to the VE (upon which the ALJ ultimately relied in formulating the RFC) included a limitation to "occasional interaction with supervisors and occasional and superficial interaction with coworkers and the public." (Tr. 83). There is no discrepancy between the question asked to the VE, and the ALJ's RFC in this regard.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB not supported by substantial evidence and recommends the decision be reversed and remanded pursuant to Sentence Four of 42 U.S.C. § 405(g).


 s/ James R. Knepp II
United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).